UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RODNEY SCHOEMANN                          CIVIL ACTION

VERSUS

eWELLNESS HEALTHCARE                NO.: 17-00123-BAJ-EWD
CORPORATION

<u>RULING AND ORDER</u>

Before the Court is the **Motion to Dismiss Counterclaims (Doc. 13)** and the **Motion for Partial Summary Judgment (Doc. 19)** filed by Plaintiff Rodney Schoemann. The parties filed oppositions (Docs. 21 and 25), and replies (Docs. 28 and 29). For the following reasons, the **Motion to Dismiss (Doc. 13)** and the **Motion for Partial Summary Judgment (Doc. 19)** are **GRANTED**.

I.    BACKGROUND

Plaintiff alleges that he executed a promissory note ("Note") with Defendant on August 16, 2016. (Doc. 1-2 at ¶ 1, p. 5). Plaintiff alleges that the Note required Defendant to pay Plaintiff $213,255.31 with interest, no later than November 14, 2016. *Id.* at ¶ 4. Plaintiff alleges that Defendant has refused to pay the balance of the Note. *Id.* at ¶ 8. Plaintiff also alleges that the Note is governed by Louisiana law. *Id.* ¶ 1.

On January 24, 2017, Plaintiff filed suit in the 19th Judicial District in the Parish of East Baton Rouge, Louisiana. (Doc. 1-2 at p. 2). Invoking the Court's diversity jurisdiction, Defendant then removed the case on March 3, 2017. (Doc. 1).

1

Defendant then filed a counterclaim against Plaintiff. (Doc. 7 at p. 8). Defendant alleges that Plaintiff made a series of loans to Defendant with interest rates that violated California law, notwithstanding the Louisiana choice of law provision contained in the loans. *Id.* at ¶ 34. Defendant also alleges that Plaintiff was privy to certain "material non-public information regarding eWellness and its financial condition" which allowed Plaintiff to make certain transactions into the trading market and/or engaged in fraud or deceit. *Id.* at ¶ 65. Additionally, Defendant claims that Plaintiff's "actions manipulated the market price of eWellness Shares through a series of transactions through his own brokerage account and the brokerage accounts he controlled[.]" *Id.* at ¶ 67.

Defendant claims that Plaintiff is liable under: (1) California's unfair competition law by extending commercial loans without a license; (2) California's unfair competition law by making loans with excessively high interest rates; (3) California Civil Code § 1916-2 and 1916-3 by making loans with excessively high interest rates; (4) Louisiana's Unfair Trade Practices Act by extending loans with interest rates that exceed the interest limitations on commercial loans; (5) the Securities and Exchange Act of 1934 § 17(a) ("Exchange Act") by engaging in insider trading; and (6) the Exchange Act by engaging in market manipulation. (Doc. 7 at p. 16-24)

## II. DISCUSSION

### A. Plaintiff's Motion to Dismiss Defendant's Counterclaims

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court "accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

### *1. Counterclaim V – Insider Trading*

Defendant claims that Plaintiff is liable for insider trading under § 17(a) of the Exchange Act. (Doc. 7 at ¶ 61). However, the United States Court of Appeals for the Fifth Circuit has held that § 17(a) does not create a private right of action. *See Landry v. All Am. Assurance Co.*, 688 F.2d 381, 384-91 (5th Cir. 1982) ("[T]he statutory language [of § 17(a)] does not suggest a private cause of action"); *Earle v. Aramark Corp.*, No. 3-CV-2960, 2005 WL 473675, *3 (N.D. Tex. 2005) ("The Fifth Circuit does not recognize a private right of action under Section 17(a) of the Securities Act of 1933"). Accordingly, Defendant's § 17(a) claim is dismissed.

Defendant also claims that Plaintiff is liable under Section 10b-5 of the Exchange Act by making false statements about eWellness shares. (Doc. 7 at ¶ 62). Plaintiff argues that Defendant's 10b-5 claim fails the heightened pleading requirement for a 10b-5 securities fraud claim. (Doc. 13-1 at p. 6). Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act together require "a plaintiff pleading a false or misleading statement or omission as the basis for a section 10(b) and Rule 10b-5 securities fraud claim [to] . . . (1) specify . . . each statement alleged to have been misleading, i.e., contended to be fraudulent; (2) identify the speaker; (3) state when and where the statement was made; (4) plead with particularity the contents of the false representations; (5) plead with particularity what the person making the misrepresentation obtained thereby; and (6) explain the reason or reasons why the statement is misleading, i.e., why the statement is fraudulent." *Goldstein v. MCI WorldCom*, 340 F.3d 238, 24 (5th Cir.

2003) (quoting *ABC Arbitrage Plaintiffs Grp. V. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).

Defendant fails to make allegations sufficient to overcome the heightened pleading requirements for a 10b-5 claim. Indeed, Defendant merely pleads the elements of a 10b-5 claim in a conclusory fashion. (Doc. 23 at ¶ 65). Specifically, Defendant fails to identify the specific misleading statements that it alleges Plaintiff made, when and where Plaintiff made them, the content of the statements, or why they were allegedly misleading. *Id.* Therefore, Defendant fails to state a claim for a 10b-5 violation.

### 2. *Counterclaim VI – Market Manipulation*

Defendant also claims that Plaintiff is liable for market manipulation under Rule 10b-5. To establish a market manipulation claim, a plaintiff must show: "(1) that it was injured (2) in connection with the purchase or sale of securities (3) by relying on a market for securities (4) controlled or artificially affected by defendants' deceptive and manipulative conduct, and (5) the defendants engaged in the manipulative conduct with scienter." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549, 580 (S.D. Tex. 2002) (citing *In re Blech Sec. Litig*, No. 94-CIV-7696, 2002 WL 31356498, *3 (S.D.N.Y. Oct.17, 2002). Like its other claim, Defendant's market manipulation claim is conclusory and alleges only the most general sense of a claim for market manipulation. Indeed, Defendant claims that "during the same period from April 2014 through October 2016, Schoemann's actions manipulated the market price of the eWellness Shares through a series of

transactions through his own brokerage account and the brokerage accounts he controlled in the names of his children[.]" (Doc. 7 at ¶ 67). Defendant fails to identify how Schoemann manipulated the share price through deceptive or manipulative conduct, a required element of a market manipulation claim. Therefore, the market manipulation claim is dismissed.[2]

### A. Plaintiff's Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and footnote omitted).

In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997) (citing *Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir.1994)). At this stage, the Court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if

---

[2] Defendant asks for leave to amend to the extent it has not adequately stated a claim for relief. (Doc. 21 at p. 5). However, Defendant did not file a proposed amended complaint, and therefore the Court denies its request for leave to amend without prejudice. Defendant should file an appropriate motion for leave to amend with a proposed pleading. The Court, however, expresses no opinion on whether it would grant a motion for leave to amend.

the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the motion for summary judgment must be denied. *Int'l Shortstop, Inc.*, 939 F.2d at 1263. On the other hand, the non-movant's burden is not satisfied merely upon a showing of "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

### 1. *Choice of Law*

Plaintiff moves for summary judgment, asking the Court to rule that Louisiana, rather than California law governs the Note. (Doc. 19-2 at p. 15). Defendant brings several claims against Plaintiff under California law even though the promissory notes at issue specifically provides that they are governed by Louisiana law. (Doc. 7 at p. 16-24). Where, as here, a court is sitting in diversity it must apply the choice-of-law rules of the forum in which it sits. *McGee v. Arkel Int'l, LLC*, 671 F.3d 539, 542 (5th Cir. 2012). In Louisiana a choice-of-law provision is presumed valid. *Barnett v. Am. Const. Hoist, Inc.*, 91 So. 3d 345, 349 (La. Ct. App. 2012). The party challenging a choice-of-law provision bears the burden of proving that the law chosen by the parties is invalid. *Id.* A choice-of-law provision is invalid if it violates the public policy of the state whose law would otherwise apply. La. Civ. Code Art. 3540; *Sentilles v. Kwik-Kopy Corp.*, 652 So. 2d 79, 81 (La. Ct. App. 1995).

It is undisputed that the Note, by its express terms, contains a Louisiana choice of law provision. (See Docs. 19-1 and 26-2). It is also undisputed that the Note

7

provides for an 18% annual interest rate. *See id.* However, Defendant argues that this choice-of-law provision violates California's public policy against usury, which prohibits interest rates higher than 10%. (Doc. 25 at p. 6). Defendant argues that California has a strong public policy against charging high interest rates because the California Constitution prohibits charging interest rates above 10% per year on any loan. (Doc. 25 at p. 8).

A state law does not violate another's public policy merely because the two states have different laws. *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 252 (5th Cir. 1994). Under Louisiana law "only strongly held beliefs of a particular state qualify for the characterization of public policy. La. Civ. Code. art. 3540 cmt. (f). California courts have held that California does not have a strong public policy against particular interest rates as long as the interest rate charged is allowed by another state's law. For example, in *Gamer v. DuPont Glore Forgan, Inc.*, the court held that California "has no strong public policy against a particular rate of interest so long as the charging of that rate is permitted by law to the specific lender." 65 Cal. App. 3d 280, 287 (Cal. Ct. App. 1976). The court concluded that a New York choice of law provision was enforceable even though New York allows interest rates in excess of the rates permitted in California. *Id.* at 290.

Many other California courts have similarly held that it does not violate California's public policy to apply another state's law even where the state permits interest rates higher than California permits. *See Sarlot-Kantarjian v. First Pennsylvania Mortg. Tr.*, 599 F.2d 915, 918 (9th Cir. 1979) (applying Massachusetts

law does not violate California's usury laws even though the loan agreement permitted interest rates up to 18%); *Palm Ridge, LLC v. Ahlers*, No. 8-CV-652, 2008 WL 11339594, at *2 (C.D. Cal. June 23, 2008) (applying Nevada over California law even though Nevada has no usury laws); *Petters Company v. BLS Sales*, No. 4-CV-2160, 2005 WL 2072109, at * 4-5 (N.D. Cal. Aug. 26, 2005) (applying a Minnesota choice of law provision even though Minnesota does not allow a corporation to assert a usury defense).[3]

Notwithstanding the mountain of precedent that establishes that California does not have a strong public policy interest in its usury laws, Plaintiff asks this Court to engage in a *de novo* review of California public policy and conclude that enforcing the choice of law provision at issue here would violate public policy. (Doc. 25 at p. 6). After review of the governing precedent, the Court is satisfied that applying a non-California choice of law provision to claims involving interest rates does not violate California public policy. Therefore, the Court concludes that the Note is governed by Louisiana law, and Defendant's counterclaims (I, II, and III) that are based on California law are dismissed.

---

[3] These courts also ask whether there is a substantial relationship between the contract and the state referenced in the choice of law provision when determining whether it violates California public policy to apply an out-of-state choice of law provision. Here, Plaintiff is domiciled in Louisiana. (Doc. 19-1 at ¶ 1), and therefore Louisiana has a substantial relationship to the contract. *See Petters*, 2005 WL 2072109, at * 5 (finding substantial relationship with Minnesota where one of the parties to a contract was incorporated in Minnesota).

III. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion to Dismiss the Defendant's Counterclaims (Doc. 13)** is **GRANTED**. Counterclaims V and VI brought against Plaintiff are **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendant's request for leave to amend its Counterclaims (Doc. 13) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's **Motion for Summary Judgment on Choice of Law (Doc. 19)** is **GRANTED**. Counterclaims I, II, and III are **DISMISSED**.

**IT IS FURTHER ORDERED** that the **Joint Motion for Status Conference with District Judge (Doc. 30)**, in which the parties seek a status conference before the Court to discuss amending the Scheduling Order is **DENIED**.

**IT IS FURTHER ORDERED** that the parties file a Joint Motion to Amend the Scheduling Order no later than 7 days after the issuance of this Order. The Joint Motion shall include specific proposed dates for an amended scheduling order. If the parties cannot agree on a proposed scheduling order, the parties shall note any disagreement and the reasons for the disagreement.

Baton Rouge, Louisiana, this 18th day of October, 2017.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA